NOTICE: THIS AGREEMENT IS SUBJECT TO ARBITRATION PURSUANT TO THE PROVISIONS OF THE NORTH CAROLINA REVISED UNIFORM ARBITRATION ACT

# RESTAURANT MANAGEMENT AGREEMENT

THIS RESTAURANT MANAGEMENT AGREEMENT (this "Agreement") is made and entered into and shall be effective as of the 1st day of May, 2017 (the "Effective Date"), by and between SergJoe, Inc., a North Carolina corporation ("Manager"), and Travinia Italian Kitchen at Morrisville, LLC, a North Carolina limited liability company ("Owner").

## RECITALS:

WHEREAS, Owner is the owner of a Travinia Italian Kitchen & Wine Bar restaurant located at Park West Village, 1301 Market Center Drive, Morrisville, NC 27560 (the "Restaurant"); and

WHEREAS, Owner leases the Restaurant location pursuant to the terms of that certain Lease Agreement dated August 3, 2010, between Owner, as the tenant, and Morrisville Partners, LLC, as the landlord (the "Lease"), a copy of which is attached hereto as Exhibit A and incorporated herein by reference; and

WHEREAS, Owner desires to retain Manager, and the Manager desires to be so retained, to manage the Restaurant on the terms and conditions which are set forth herein.

NOW THEREFORE, in consideration of the foregoing and the mutual covenants, promises and agreements set forth herein, the parties hereto hereby agree as follows:

1. Retention of Manager. Owner hereby engages Manager and Manager agrees to operate and manage the Restaurant on an exclusive basis in accordance with the terms of this Agreement.

2. Term. The term of this Agreement shall commence as of the Effective Date and shall continue thereafter until the earlier of (a) the date on which the BB&T Loan (as defined below) is fully satisfied and paid in full, (b) the date on which the Lease terminates, or (c) this Agreement is terminated by either party in accordance with Section 12 hereof (the "Term").

3. Duties of Manager.

(a) Subject to the provisions of this Agreement, Manager shall have decision-making authority and responsibility for the day-to-day operation, direction, management, accounting and supervision of the Restaurant. Manager's authority and obligations shall include:

(i) Hiring, training, compensation, supervision (including uniforms and appearance guidelines) and termination of Restaurant personnel, and determining the number of staff required and the hours of operation;

(ii) The creation of food and beverage menus, wine lists, and the pricing of the same and the setting of dress codes for the Restaurant;

(iii) Establishing and supervising all advertising, public relations and promotional policies with respect to the Restaurant;

(iv) Purchasing and maintaining the Restaurant's inventory of food, beverages (including, without limitation, wines and liquors) and operating supplies; maintaining bookkeeping records, checkbooks and bank reconciliations; and managing payables and receivables;

(v) Obtaining, and keeping in full force and effect, in the name of Owner or Manager, as appropriate (or as expressly provided herein), all necessary licenses and permits (including the liquor license and other bar, restaurant, sign and occupancy licenses and permits as may be required by law to operate the Restaurant from time to time. Manager shall not take any actions which could jeopardize or otherwise adversely affect any of such licenses or permits. Manager shall comply with the conditions set forth in any such licenses and permits and at all times shall manage and operate the Restaurant in accordance with such conditions and other applicable laws;

(vi) Applying sound administrative, accounting, cash management, budgeting, operational, sales, advertising, legal, personnel and purchasing policies and practices in accordance with the terms of this Agreement to the end of optimizing the aggregate amount of cash flow generated by the Restaurant; and

(vii) Notifying Owner if Manager has actual knowledge relating to, and promptly forwarding to Owner any notices or other communications it delivers or receives with respect to: (A) the occurrence of damage or destruction to the Restaurant; (B) any litigation, claim or proceeding affecting Owner, Manager or the operation of the Restaurant, and any written threat to institute any of the same which is likely to give rise to any such litigation, claim, or proceeding; and (C) any notice of violation (or alleged violation) of any law relating to the ownership or operation of the Restaurant which could reasonably expose Owner or Manager to any criminal penalty or to any civil penalty or which is otherwise material to the ownership or operation of the Restaurant.

(b) In addition to any other limitations on Manager's authority set forth in this Agreement, Manager shall not, without Owner's written approval (which written approval, solely with respect to items (i) and (iii) below, shall not be unreasonably withheld or delayed), take any of the following actions with respect to the Restaurant (except as otherwise expressly permitted by the terms hereof):

(i) Enter into any contract or other agreement in the name of or on behalf of Owner or which is otherwise binding upon the assets or properties of Owner;

(ii) Enter into any amendment to the Lease or otherwise enter into any lease, license, concession or other occupancy agreement related to the Restaurant;

(iii) Settle any litigation or claims against or involving Owner;

(iv) Borrow money, issue any guarantees or incur any interest or contingent obligation in the name of or on behalf of Owner or which is otherwise binding upon the assets or properties of Owner;

(v) Sell, transfer or otherwise dispose of all or any portion of the Restaurant, except for the sale of food and beverage inventory in the ordinary course of business;

(vi) Acquire any capital assets of more than $2,500 or interest therein in the name of or on behalf of Owner (for clarity, Manager may acquire items for its own account); or

2

(vii) Finance, refinance or otherwise encumber the Restaurant or any portion thereof or any other assets or properties of Owner.

4.  One-Time Fee Payable to Owner. As a material inducement to Owner to grant to Manager the right and privilege to manage the Restaurant pursuant to the terms of this Agreement, Manager hereunder (the "Management Fee"). Manager agrees to pay to Owner a one-time fee in the amount of $ 115,000.00 (the "One-Time Fee"). Such payment shall be due and payable in full simultaneously with the execution and delivery of this Agreement. (as of 5/10/17)

5.  Management Fee Payable to Manager. So long as this Agreement is in full force and effect and Manager is not in default hereunder, Manager shall be entitled to a management fee equal to the Net Profits (as defined below), if any, of the Restaurant as compensation for the services provided by Manager hereunder (the "Management Fee"). The Management Fee shall be payable monthly, in arrears, subject to year-end audit and adjustment. As used herein, "Net Profits" of the Restaurant shall mean the net profits from the operation of the Restaurant, after all expenses incurred in connection therewith have been paid or provided for, including, without limitation, all payables, debt service, rent, sales and other taxes and payroll. It is the intention of the parties that the current cash flow model for the Restaurant shall remain in effect. The determination of Net Profits shall be made by the accountants then servicing Owner in accordance with generally accepted accounting principles applied in determining the income, gains, expenses, deductions or losses, as the case may be, reported by Owner for federal income tax purposes, and such determination shall be conclusive and binding upon the parties hereto. Notwithstanding the foregoing, the Management Fee shall be payable on a current basis only to the extent there is sufficient cash flow from operation of the Restaurant (prior to deduction of the Management Fee) after all operating expenses (other than the Management Fee) have been accrued. The parties acknowledge that the Restaurant currently pays a pro-rata share of Travinia's corporate overhead (whether or not the Restaurant uses a resource provided by the home office), as well as forwards to the home office whatever supplier rebates it earns. Notwithstanding anything to the contrary in this Agreement, the parties agree that, on behalf of the Restaurant, Manager shall pay the home office only for the resources it actually uses and whatever supplier rebates the Restaurant earns will be retained as part of the Restaurant's revenues. The parties further acknowledge that Owner is currently indebted to BB&T in the amount of $360,000 (the "BB&T Loan") on a five-year note (the "Note"), running from February 10, 2017 to February 5, 2022, at an annual interest rate of the prime rate (as published in The Wall Street Journal) plus 1.5%, with no prepayment penalty. A copy of such Note is attached hereto as Exhibit B. Notwithstanding anything to the contrary in this Agreement, the parties agree that, on behalf of Owner, Manager shall pay when due the principal and interest on the Note as part of the Restaurant's expenses. The parties further agree that at such time as the BB&T Loan is fully satisfied and paid in full, ownership of the Restaurant and title to all of the Restaurant's furniture, fixtures and equipment shall, without additional consideration, be transferred by Owner to Manager.

6.  Operating Account. Gross revenues or funds supplied by Owner or Manager, exclusive of working capital, shall be deposited in an account (the "Operating Account") at a bank selected by Manager and approved by Owner. Title to the Operating Account shall be in Owner's name. Owner shall be a co-signatory on the Operating Account. Checks or other documents of withdrawal therefrom shall be signed by Joe Giampapa or Sergio Briceno. Owner shall also be authorized to sign such checks or documents of withdrawal, but Owner shall exercise this authority only upon the occurrence of an Event of Default (as defined below), either acknowledged by Manager or clearly supported by evidence as determined by an independent third party pursuant to the dispute resolution process set forth in Section 17.

7.  Disposition of Accounts Payable. Manager shall pay or cause to be paid, within forty-five (45) days after receipt, all invoices for goods or services provided to Manager or in respect of the Restaurant, unless Manager is disputing, in good faith, the amount or validity of any such invoice. If Manager is disputing any such invoice, Manager shall deposit with Owner in reserve the amount of such invoice, which amount shall be released to Manager upon final disposition of such dispute and payment in full of the then agreed amount of such invoice. In addition, if any mechanic's or materialmen's lien is filed against the Restaurant or any interest therein by reason of any claim relating to the Restaurant, then within 30 days after the filing thereof Manager shall cause the same to be discharged of record by filing the necessary bond or otherwise.

8.  Disbursement of Funds; Audit Rights of Owner.

    (a)  After Manager deducts all authorized expenses relating to the operation of the Restaurant from the revenues generated by Restaurant operations, Manager may disburse any remaining Net Profits as it sees fit.

    (b)  Owner shall have the right, at any time during the Term, through its employees, accountants or other representatives, to audit Manager's books and records relating to the Restaurant. Manager shall cooperate with Owner in connection with any such audits in all reasonable respects, including, without limitation, making available for review and copying by Owner, Owner's employees, accountants or other representatives, all of Manager's books and records relating to the Restaurant.

9.  Insurance. At all times during the Term hereof, Manager shall maintain in effect all insurance coverages, or their equivalent, that the Restaurant currently carries. All property damage insurance maintained pursuant to this Section shall be in the name of Owner (it being agreed that Manager shall have no interest therein and shall not be named as a loss payee thereunder). Any liability and business interruption insurance maintained pursuant to this Section shall be in the name of Manager with Owner named as an additional insured and loss payee as their interests may appear. Workmen's compensation insurance and crime insurance maintained pursuant to this Section shall be in the name of Manager with Owner as an additional insured and loss payee. The cost of insurance maintained pursuant to this Section shall be paid as an operating expense. If any insurance is procured by Manager, certificates of such insurance policies shall be delivered to Owner as soon as practical and thereafter certificates of renewal shall be delivered to Owner not less than thirty (30) days prior to the expiration date of such policies. Owner shall deliver to Manager copies of certificates of insurance policies procured by Owner.

10.  Staffing and Labor Issues. Manager shall hire and replace as necessary throughout the Term, such staff as shall be necessary to operate the Restaurant. All Restaurant personnel shall be, for all purposes (including, without limitation, insurance), Manager's employees. Manager shall not discriminate against any employee or applicant for employment at the Restaurant because of race, creed, color, age, sex or national origin, or any other class of persons protected under law.

11.  Maintenance and Repair of Restaurant. Manager shall keep the Restaurant (including, without limitation, all furniture, decoration and equipment) in good condition and in accordance with the Lease and, upon expiration or earlier termination of the Term, shall surrender the same to Owner in the same condition as when first occupied, reasonable wear and tear excepted. Manager's obligation shall include, without limitation, the obligation to pay for all damage to the Restaurant, furniture, decoration, equipment and other installations in the Restaurant caused by Manager, its agents, employees, invitees and licensees. Manager shall not commit or allow to be committed any waste or damage to any portion of the Restaurant. Non-material changes excepted, Manager shall not make any significant alterations or improvements to the Restaurant without Owner's consent, which consent may be granted or withheld in Owner's sole discretion.

Initials  
JG

3

4

12. Termination; Events of Default.

(a) This Agreement shall, at Owner's option, terminate and be of no further force or effect upon the occurrence of any one or more of the following occurrences (each of which shall constitute an "Event of Default"):

(i) The suspension for more than one week or revocation of the liquor license or other material license for the Restaurant, resulting from Manager's or Manager's employees', agents' or contractors' acts or omissions, unless (and for so long as) a court of competent jurisdiction stays the effect of any such suspension or revocation such that (except for a suspension of not more than one week) there is no effect on the continued operation of the Restaurant (including the sale of alcohol);

(ii) The filing of a petition against Manager in an involuntary case under the United States Bankruptcy Code which is not dismissed within sixty (60) days after the filing thereof, or in any such involuntary case, the approval of the petition by Manager as properly filed, or the admission by Manager of material allegations contained in the petition; the execution by Manager of a general assignment for the benefit of creditors; the commencement of a voluntary case under the United States Bankruptcy Code by Manager; the appointment of a receiver, liquidator, administrator, trustee or other party with similar powers for Manager or for all or a substantial part of the assets of Manager; the commencement by Manager of liquidation, dissolution or winding-up proceedings, or the commencement against Manager of a proceeding to liquidate, wind-up or dissolve Manager, which proceeding is not dismissed within sixty (60) days;

(iii) The failure by Manager to pay the One-Time Fee on or before the date on which such payment is due, as set forth in Section 4;

(iv) The failure by Manager to make any required payment (other than the One-Time Fee), when due, pursuant to this Agreement, within 2 business days after notice from Owner;

(v) Any warranty or representation made herein or any document or financial statement or report executed or delivered in connection herewith or pursuant hereto being found to be inaccurate or incomplete in any material respect; or

(vi) Any other breach of Manager's obligations under this Agreement which shall continue following 5 business days after notice from Owner.

(b) Upon the expiration or earlier termination of this Agreement, for whatever reason, Owner and Manager shall do the following (and the provisions of this clause shall survive the expiration or termination of this Agreement until they have been fully performed):

(i) All books and records for the Restaurant kept by Manager shall be turned over to Owner so as to ensure the orderly continuance of the operation of the Restaurant; and

(ii) Manager shall prepare and deliver to Owner an interim accounting statement with respect to the Restaurant dated as of the termination date within forty-five (45) days following the termination date and a final accounting statement within ninety (90) days following the termination date. Within ten (10) business days following Owner's receipt and approval of such final accounting statement, a reconciliation shall be made of any amounts, if any, due Manager as of the termination date and Manager shall reimburse Owner for any overpayment made to Manager.

13. Assignment. Neither party shall have the right to assign or encumber any of its rights or obligations under this Agreement without the prior written consent of the other party and any purported assignment or encumbrance by either party without the prior written consent of the other party shall be null and void and of no force or effect.

14. No Partnership. Nothing in this Agreement shall constitute or be construed to be or create a partnership or joint venture between Owner and Manager, or be construed to be or create a lease or sublease by Manager of the Restaurant.

15. Indemnity.

(a) Manager hereby covenants and agrees to indemnify, save, defend, at Manager's sole cost and expense, and hold harmless, Owner (and Owner's affiliates) and the officers, directors, managers, agents, employees, legal representatives, members and shareholders thereof, and the successors and assigns of each of the foregoing (all of such parties being collectively referred to herein as the "Owner Indemnified Parties" and each such reference to such term shall jointly and severally apply to each such party) from and against the full amount of any and all costs or expenses (including reasonable attorneys' fees) which may be asserted against any Owner Indemnified Party, arising from, in respect of, as a consequence of, or in connection with the management, operation or maintenance of the Restaurant on and after the Effective Date.

(b) Owner hereby covenants and agrees to indemnify, save, defend, at Owner's sole cost and expense, and hold harmless, Manager (and Manager's affiliates) and the officers, directors, managers, agents, employees, legal representatives, members and shareholders thereof, and the successors and assigns of each of the foregoing (all of such parties being collectively referred to herein as the "Manager Indemnified Parties" and each such reference to such term shall jointly and severally apply to each such party) from and against the full amount of any and all costs or expenses (including reasonable attorneys' fees), which may be asserted against any Manager Indemnified Party, arising from, in respect of, as a consequence of, or in connection with the management, operation or maintenance of the Restaurant prior to the Effective Date.

16. Reimbursement of Owner. If Owner shall make any payments with respect to the Restaurant for which reimbursement shall be required by Manager, Manager shall reimburse Owner therefor within 30 days after notice is given by Owner.

17. Dispute Resolution. Any dispute, controversy or claim arising out of or relating to this Agreement (a "Dispute"), including any dispute concerning its construction, performance or breach of this Agreement, shall be resolved exclusively through the procedure set forth in this Section 17. Except as set forth below or as required by law, the parties waive all rights to seek remedies in any court and the right to a jury trial. All documents, discovery and other information related to any Dispute, and the attempts to resolve, mediate or arbitrate such Dispute, shall be kept confidential.

(a) If a Dispute arises, the parties shall act in good faith and use commercially reasonable efforts to promptly resolve the Dispute before proceeding to mediation as set forth below.

(b) If the parties are unable to resolve the Dispute within thirty (30) days after the date the Dispute arose, then the parties shall act in good faith and use commercially reasonable efforts to agree upon and retain a third party mediator to facilitate resolution of the Dispute. The mediation shall be

5

6

held in Raleigh, North Carolina within thirty (30) days after the date the parties agree upon and retain a third party mediator.

(c) If the parties are unable to agree upon a third party mediator within forty-five (45) days after the date the Dispute arose, or if the parties are otherwise unable to resolve the Dispute through mediation, then the Dispute shall be resolved by binding and final arbitration, which shall be conducted in Raleigh, North Carolina in accordance with the North Carolina Revised Uniform Arbitration Act and administered by the American Arbitration Association under its Commercial Arbitration Rules. The Rules of the American Arbitration Association shall govern selection of the arbitrator(s); provided, however, that any claim or controversy in excess of $100,000.00 shall be heard and determined by three arbitrators upon the request of either party. Any judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitrator(s) shall establish the rules for proceeding with the arbitration of the dispute, which will be binding upon all parties to the arbitration proceeding. The arbitrator(s) may use the rules of the American Arbitration Association under its Commercial Arbitration Rules but is encouraged to adopt the rules the arbitrator(s) deem appropriate to accomplish the arbitration in the quickest and least expensive manner possible. The arbitrator(s): (i) shall permit each side no more than a total of four (4) hours of depositions without regard to the number of deponents and one (1) set of five (5) interrogatories (inclusive of sub-parts); (ii) shall not permit any requests for admissions; (iii) shall limit the hearing, if any, to two (2) days of eight (8) hours each; and (iv) shall render his or her decision within sixty (60) days of the filing of the arbitration. Each party shall bear its own costs with respect to the arbitration and the fees and expenses of the arbitrator(s) shall be paid 50% by each party.

18. **Miscellaneous Provisions.**

(a) This Agreement supersedes all previous contracts, agreements and understandings of the parties, either oral or written, relating to the subject matter hereof and the transactions contemplated hereby. This Agreement cannot be modified, or any of the terms hereof waived, except by an instrument in writing executed by the party against whom enforcement of the modification or waiver is sought.

(b) This Agreement may be executed in any number of counterparts and each of such counterparts shall for all purposes be deemed an original, and all such counterparts shall together constitute one and the same instrument.

(c) Owner and Manager shall execute and deliver all other appropriate supplemental agreements and other instruments, and take any other action necessary to make this Agreement fully and legally effective, binding and enforceable as between them and as against third parties and to carry out the purposes and intents of this Agreement.

(d) The waiver of any of the terms and conditions of this Agreement on any occasion or occasions must be in writing and shall not be deemed a waiver of such terms and conditions on any future occasion.

(e) This Agreement shall be binding upon and inure to the benefit of Owner, its successors and assigns, and shall be binding upon and inure to the benefit of Manager, its permitted successors and assigns.

(f) This Agreement shall be governed by the internal laws of the State of North Carolina without giving effect to conflict of laws principles thereof.

7

(g) Except as otherwise expressly provided, the terms and provisions of this Agreement shall be confidential between Owner and Manager and shall not be released to any persons or entities except (i) to the attorneys, accountants or other parties advising Owner and/or Manager in connection with this Agreement, (ii) in connection with enforcement proceedings in any court or arbitration proceeding or in connection with any order of court, (iii) as may be required to comply with any applicable laws, and (iv) to any prospective purchaser of all or any portion of Owner's interests in the Restaurant, any landlord or any prospective purchaser of any direct or indirect interest in Owner or any of its partners. Manager agrees that it shall keep all information relating to the Restaurant confidential and shall not release the same to any persons or entities other than Owner or Manager's consultants who need to know the same in connection with the performance of Manager's obligations hereunder and as may be required to comply with any order of court or applicable law.

(h) Any notice, payment, report, request or other communication (each a "Notice") required or permitted to be given by one party to the other party under this Agreement shall be in writing and shall be delivered by (a) personal delivery or (b) express, registered or certified first-class mail, return receipt requested, postage prepaid, addressed to the other party at its address as indicated below, or to such other address as the addressee shall have furnished to the other party by like notice:

If to Manager:

SergCo LLP

Attn: _____

If to Owner:

Travinia Italian Kitchen at Morrisville, LLC
c/o Travinia Italian Kitchen Holdings, Inc.
1200 Woodruff Road, Suite C-36
Greenville, SC 29607
Attn: Mark H. Craig

[Signature Page Follows]

8

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

OWNER:

TRAVINIA ITALIAN KITCHEN AT MORRISVILLE, LLC

By: *(signature)*
Name: Mark H. Craig
Title: Managing Member

MANAGER:

SERGJOE, INC.

By: *(signature)*
Name: JOSEPH A. GIUFFRIDA
Title: Pres.

9